UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LILBERT GREGORY,

               Plaintiff,                  Case No. 4:21-cv-10408
                                       District Judge Matthew F. Leitman
v.                                   Magistrate Judge Anthony P. Patti

HEIDI WASHINGTON, *et al*.,

               Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (ECF No. 32)

**I.    RECOMMENDATION**: The Court should **GRANT** the Michigan

Department of Corrections (MDOC) Defendants' motion to dismiss or for

summary judgment (ECF No. 32), and dismiss from the lawsuit Defendants Heidi

Washington, Robert Vashaw, Kelly Bennett, Richard Dodman, Richard D. Russell,

Patricia Lamb, Karen Branch, Candace Comer, Stephanie Adams, Rebecca Smith,

Loria Coleman, and Natalie Sowder/aka Souder.[1]  This would leave claims

_____

[1] This Defendant's name is spelled Natalie C. Sowder on the docket, but Natalie Souder in Defendants' instant motion (*see* ECF No. 32, PageID.152).  The Undersigned will thus use the spelling Souder throughout this report and recommendation.

remaining against only Defendants Mary Zamora, Darrel Barrows, Keith Papendick, and Connie Whipple.

## II.    REPORT

### A.    Background

#### 1.    Factual Background

Plaintiff, a state prisoner[2] proceeding *in forma pauperis*, filed the instant action under 42 U.S.C. § 1983 on February 5, 2021, against: (1) Heidi Washington, (2) Robert Vashaw, (3) Mary Zamora, (4) Darrel Barrows, (5) Kelly Bennett, (6) Richard Dodman, (7) Richard D. Russell, (8) Keith Papendick, (9) Connie Whipple, (10) Patricia Lamb, (11) Karen Branch, (12) Candace Comer, (13) Stephanie Adams, (14) Rebecca Smith, (15) Loria Coleman, and (16) Natalie Souder, in their individual and official capacities.  (ECF No. 1.)  He claims deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment and Article 1, § 16 of the Michigan Constitution.

The underlying facts, <u>as alleged in Plaintiff's complaint</u>, are as follows.  In December 2019, while housed at the Charles E. Egeler Reception and Guidance Center (RGC), Plaintiff was approved for a prostate biopsy.  (ECF No. 1, PageID.12, ¶ 1.)  However, he was transferred to St. Louis Correctional Facility

---

[2] *See* www.michigan.gov/corrections, "Offender Search."

(SLF) on December 27, 2019, and despite sending medical kites, complaints, grievances, and letters to Defendants Dr. Barrows, SLF Warden Vashaw, and SLF Health Unit Manager (HUM) Zamora, did not undergo the biopsy until May 29, 2020, at which time Dr. Michael Hoff diagnosed him with prostate cancer and ordered treatment.  (ECF No. 1, PageID.12-13, ¶¶ 2-4.)

On June 11, 2020, Plaintiff spoke with Defendant Dr. Barrows, who indicated that Plaintiff's cancer was contained within his prostate, and that it would take two or three weeks to see a radiologist.  (ECF No. 1, PageID.13-14, ¶¶ 5-6.) When Plaintiff began experiencing severe pelvic pain in August, he wrote a kite to Defendant HUM Zamora for pain medication.  (ECF No. 1, PageID.14, ¶ 7.) However, he did not receive Naproxen for the pain until September 21, 2020, and ultimately, the medication did not relieve his pain.  (ECF No. 1, PageID.14, ¶ 17.)

On August 31, 2020, Defendants Dr. Barrows and HUM Zamora approved Defendant Health Information Manager (HIM) Bennett's order for an "abdomen/pelvis," and on September 15, 2020, Dr. Amar S. Mehta at Mid Michigan Health informed Plaintiff that the cancer has spread to his lymph nodes. (ECF No. 1, PageID.14-15, ¶¶ 8.)  Dr. Devin Malik at Henry Ford Health System confirmed Plaintiff's Stage IV cancer diagnosis on October 28, 2020, and questioned why it had taken so long for Plaintiff to see an oncologist.  (ECF No. 1, PageID.17, ¶ 13.)  Plaintiff was then transferred from SLC to G. Robert Cotton

3

Correctional Facility in November 2020, but he continued to see Dr. Malik, who apologized that this happened to Plaintiff, and said he could only work to prolong Plaintiff's life, as the cancer had spread too far.  (ECF No. 1, PageID.17-18, ¶¶ 14-15.)

On the basis of the above allegations, Plaintiff claims that Defendants showed deliberate indifference to his serious medical needs by delaying diagnosis and treatment and failing to adequately manage his pain.  (ECF No. 1, PageID.19-24, ¶¶ A-I.)

### 2.     Instant Motion

On January 31, 2022, eleven of the sixteen named Defendants—Washington, Vashaw, Bennett, Dodman, Russell, Lamb, Branch, Adams, Smith, Coleman, and Souder (hereinafter collectively referred to as the Michigan Department of Corrections (MDOC) Defendants)—filed the instant motion to dismiss or, in the alternative, for summary judgment.  (ECF No. 32.)  They argue that: (1) the Court should dismiss Plaintiff's claims against the MDOC Defendants for failure to state a claim against them; and (2) the Court should grant summary judgment on the claims against the above Defendants as well as Defendant Bennett, for Plaintiff's failure to exhaust administrative remedies.  (ECF No. 32, PageID.152, 163-177.)

Defendant Comer filed a notice of joinder/concurrence on February 16, 2022, asserting that the Plaintiff also failed to exhaust any claims against her, and that

> there are no allegations (or support in the record for a finding) that [she] was personally involved in any unconstitutional conduct. Just as Plaintiff failed to state a claim against certain Codefendants, the Complaint is silent as to any actions taken by [her]. Nor could such a claim be made. The medical records provided by the MDOC pursuant to the Early Mediation Protocol confirm that [her] only contacts with Plaintiff occurred on November 2-3, 2020. Those visits occurred **after** Plaintiff's metastatic diagnosis in September of 2020 and **after** he had begun Oncology treatments in October of 2020. Neither of those encounters were related to Plaintiff's cancer; instead, one was for a dental issue and one was for pain that Plaintiff initially thought might be cancer-related, but later decided was his hernia.

(ECF No. 35) (internal citations omitted).

Plaintiff responded by filing a declaration in opposition, arguing that: (1) he stated a claim for deliberate indifference in his grievances and in his complaint; (2) his Exhibit C, which includes grievances, demonstrates exhaustion of his claims; (3) Exhibit A, which includes medical kites, and Exhibit C demonstrate that he received improper medical treatment and suffered pain as a result; and (4) he mentioned SLF staff in his grievances, as established by his Exhibits C and D, and brought constitutional violations "to the attention of Lansing [Department], the Director, the Warden, and the Health Unit Manager [HUM] in Exhibit D." (ECF No. 37, PageID.241-242.) Further, he asserts that he wrote numerous kites requesting medical treatment and that he:

5

> will also show on the record and in Exhibit B and C where grievances
> were upheld and or denied knowing there was a constitutional
> violation happening.  Robert Vashaw, Richard D. Russell, Patricia
> Lamb all participated directly in Plaintiff's constitutional rights being
> violated.  All defendants after being informed of the constitutional
> violations through grievances and the record named in Complaint
> acted with deliberate indifference by failing to promulgate the rules
> and enforce their authority to rectify the constitutional violations.

(ECF No. 37, PageID.242.)

In her March 28, 2022 reply brief, Defendant Comer argues that she was not named in any of Plaintiff's grievances, and the grievances on which Plaintiff relies to establish exhaustion all pre-date her care.  (ECF No. 38.)  The MDOC Defendants, in their April 1, 2022 reply brief, contend that Plaintiff failed to address the merits of the arguments made in their motion and fails to state a claim, and that "[b]ecause the exhaustion analysis of [Plaintiff's relevant grievances] do not turn on whether [Plaintiff] attempted to resolve an issue bring grieved, [Plaintiff's] kites are irrelevant to the exhaustion issue in this case."  (ECF No. 39, PageID.297-298.)

### 3.    Relevant Grievances

The MDOC Defendants attached to the instant motion Plaintiff's Step III Grievance Report (ECF No. 32-3), which contains four grievances pursued through Step III at SLF, and identify SLF-20-090876-28a (SLF-876) and SLF-20-06-0503-28e/12e1 (SLF-503) as the relevant grievances.

### a.   SLF-503

At Step I of SLF-503, dated May 28, 2020, Plaintiff listed the incident dates

as December 28, 2019 and May 20, 2020, and complained, in part:

> M.D.O.C/and the medical staff/HUM here at St. Louis Correctional
> Facility has been aware of my P.S.A level for the past 5 months
> knowing that a P.S.A at 43.5 is very bad and needs immediate
> attention when a P.S.A is sup[p]osed to be no higher [than] .4[.]  I was
> approv[ed] for treatment in Nov of 2019 due to possible prostate
> cancer the medical/HUM intentionally and deliberately reschedule[d]
> 6 appointments within a 5 month span knowin[g] that there is a
> limited ability to cure advanced prostate cancer[.]
> M.D.O.C/HUM/medical staff has "failed to timely dia[g]nose and
> treat[.]

(ECF No. 32, PageID.199, 203, 209) (cleaned up).

The grievance was originally denied as untimely at Step I (ECF No. 32-3,

PageID.198, 206), but later reviewed on the merits, with the Step I response,

signed by Respondent Defendant Dodman, stating in part:

> Review of PHR indicates his initial prostate biopsy scheduled for 3-6-
> 20 was cancelled by the offsite medical office the day the procedure
> was to be completed.  It was rescheduled 3-27-20 but was
> subsequently cancelled due to Governors Executive Order regarding
> COVID-19.  Prostate biopsy was rescheduled and completed on 5-29-
> 20.  The results of the testing was discussed with the patient on 6-11-
> 20, and a follow up with Urology Clinic has been requested to discuss
> a plan for treatment.

(ECF No. 32, PageID.210.)

In his Step II appeal, Plaintiff accused Step 1 Respondent Defendant

Dodman of missing the point of his grievance (ECF No. 32-3, PageID.201, 204,

207), but Step II Respondent Defendant Lamb rejected this argument (ECF No. 32-3, PageID.201-202, 204, 207-208), and the denial was upheld at Step III with the signature of Defendant Russell, Manager of the Grievance Section of the Office of Legal Affairs (ECF No. 32-3, PageID.205).

### b.   SLF-876

At Step I of SLF-876, dated October 1, 2020, with an incident date of September 28, 2020, Plaintiff complained:

> I told Dr. Barrows, the medical staff and the HUM I need treatment due to severe pain and that my cancer is getting worse.  Every day 9/28/20 9/29/20 I'm asking has an appointment been made for me to see oncologist[.]
>
> M.D.O.C and medical has been aware of my elevated P.S.A. jumping from 20.3 to 35.5 to 47.6 since Dec of 2019.  As of 6/2/2020 M.D.O.C has was made aware of the biopsy positive for cancer and has failed to treat.  March of 2020 Gove[r]nors orders of exception from Covid 19 are 'cardiovascular disease', 'cancer testing and treatment' 'pregnancy' 'organ transplants' and 'dialysis'[.]  There is more than '1' facility that treat[s] cancer.  As of <u>10/1/2020</u> I talk with the oncologist televideo and was told that the cancer has spreaded [sic] to my lymph nodes, but he would have me tested for a second opinion but he is 98% sure of his findings.  M.D.O.C and medical has failed to treat or even acknowledge[e] my condiction [sic] or even expedite my treatment knowing that there is a limited ability to treat and cure advance prostate cancer, this is clearly neglect and a violation of my 8th Admendment [sic] [.]

(ECF No. 32-3, PageID.196) (cleaned up).

This grievance was rejected at Step I as duplicative of SLF-503, and the rejection was upheld through Step III, with Defendants Vashaw and Russell

serving as respondents at Steps II and III respectively.  (ECF No. 32-3, PageID.193-195.)

### c.    SLF-775

Along with SLF-503 and SLF-876 (ECF No. 1, PageID.33-37, 39-40, 44-47), Plaintiff attached to his complaint three Step I grievance forms not included in the Step III Grievance Report attached to the instant motion, one of which is labeled with a grievance identifier and two of which are unlabeled.  In the two unlabeled Step I forms, Plaintiff complained about Grievance Coordinator K. Parsons's handling of grievances, including SLF-876.  (ECF No. 1, PageID.41-43.)

The third is a Step I form dated August 20, 2020, with incident dates of August 6 and 13, 2020, and bearing the grievance identifier SLF-20-08-0775-28a, in which Plaintiff complained:

> I have put in several health care kites to be seen by nurse/doctor due to severe pain in my prostate and lower back[.]
>
> It is very sad that I've been dia[g]nose with cancer since May of this year 2020.  Being I had to wait 5 months for a biopsy that was approved in December of 2019.  M.D.O.C and St. Louis Medical they are in dereliction of their duty, and intentionally neglecting their duty, by failure to have seen me by a urologic oncologist for treatment. And failure to expedite my treatment or even acknowledging my condition, I've been complain[ing] about my pain, and suffering due to this cancer.  I was told by the nurse L.P.N Smith [unreadable] that Dr. D Barrows said that I'm already taking Cymbalta that will help suppress the pain alone with purchasing Asp[i]rin and Motrin out of the inmate store there is nothing he can do for my pain verbatim.  This is unconstitutional and is a clear violation of my 8th and 14th Amendment.  M.D.O.C and medical will be held liable.

9

(ECF No. 1, PageID.38) (cleaned up).  However, Plaintiff attaches nothing to

confirming that this grievance was appealed through Step III.

### B.    Standards

#### 1.    Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), the courts must

"construe the complaint in the light most favorable to the plaintiff and accept all

allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim

need not contain "detailed factual allegations," but it must contain more than

"labels and conclusions" or a "formulaic recitation of the elements of a cause of

action").  Facial plausibility is established "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an

inference depends on a host of considerations, including common sense and the

strength of competing explanations for the defendant's conduct." *16630 Southfield*

*Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).  To make

this determination, a court "may consider the Complaint and any exhibits attached

thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### 2.    Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving

party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary

judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus., & Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

## C.    Discussion

### 1.    The Eleventh Amendment bars Plaintiff's official capacity claims against the MDOC Defendants and Defendant Comer

Initially, despite the fact that neither the MDOC Defendants nor Defendant Comer raised the issue, the Court should dismiss Plaintiff's official capacity[3] claims against them.

---

[3] In the form portion of the complaint where Plaintiff lists the Defendants, he has checked the boxes for both individual and official capacity under each name. (ECF No. 1, PageID.1-9.)

"[T]he Eleventh Amendment bars a damages action against a State in federal court," and "[t]his bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (internal citation omitted). As Plaintiff requests only monetary damages, beyond requesting the appointment of counsel and release on a tether pending his criminal appeal, which is not before this Court (ECF No. 1, PageID.27), his official capacity claims against the MDOC Defendants and Defendant Comer should be dismissed.

### 2.    Failure to state a claim

The MDOC Defendants argue that all but Defendant Bennett should be dismissed from the lawsuit under Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to sufficiently plead their personal involvement in any of the allegedly unconstitutional conduct.  (ECF No. 32, PageID.152, 163-167; ECF No. 39, PageID.235-237.)  Specifically, as summarized in their reply brief, the MDOC Defendants assert that

> [Plaintiff] fails to state a claim for a variety of reasons: he does not make any allegations against Russell, Dodman, Lamb, Branch, Adams, Smith, Coleman, and Souder; the administrators and supervisors (Washington, Vashaw, Russell, Dodman, and Lamb) did not provide the medical care he received; and Russell, Dodman, and Lamb's participation in the grievance process cannot sustain a § 1983 claim.

14

(ECF No. 39, PageID.295-296.)  Defendant Comer concurs, stating that "there are no allegations (or support in the record for a finding) that [she] was personally involved in any unconstitutional conduct."  (ECF No. 35, PageID.230.)

The Sixth Circuit "has consistently held that damage claims . . . arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citation omitted).  In other words, a plaintiff must allege the personal involvement of *each* defendant and must allege facts showing that *each* defendant participated in, condoned, encouraged, or knowingly acquiesced in alleged misconduct to establish liability.  *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).

Further, the claim of deliberate indifference to serious medical needs requires a showing of both objective and subjective components.  *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008).  "The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need."  *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

> The subjective component requires a showing that the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety. [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  An express intent to inflict unnecessary pain is not required.  Rather, obduracy and wantonness are required to make a showing of deliberate indifference.  [A]n official's failure to alleviate a significant risk that he should have perceived but did not,

> while no cause for commendation, cannot under our cases be
> condemned as the infliction of punishment.

*Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018) (internal quotation marks and

citations omitted; alterations in original).

> ### a.    Defendants Branch, Adams, Coleman, Souder, and Comer

The MDOC Defendants and Defendant Comer assert that Defendants

Branch, Adams, Coleman, Souder, and Comer are entitled to dismissal for failure

to state a claim, as Plaintiff's complaint contains no specific allegations against

them.  (ECF No. 32, PageID.163-166; ECF No. 35, PageID.230; ECF No. 38,

PageID.288-289; ECF No. 39, PageID.295-297.)  For the reasons that follow, I

agree.

Even viewing the complaint in the light most favorable to Plaintiff, and

reading the claims in accordance with the liberal pleading standards applied to *pro*

*se* complaints, I see no specific allegations directed at these Defendants, all of

whom are identified as registered nurses (RNs), with the exception of Defendant

Comer, who is identified as an SLF nursing supervisor.  Plaintiff does refer

generally to "Defendants" and "RNs" collectively throughout his complaint, very

broadly stating, for example:

> The Defendants named her[e]in have delibreatly [sic] with great
> indiffereance subjected Plaintiff to unnecessary pain, suffering, mental
> stress by failure to provide Plaintiff with a[n] environment that does
> not impair Plaintiff physical and mental health.  Also Defendants

16

failure to diagnose and treat, nor expedite or even acknowledg[e] Plaintiff condiction [sic].

(ECF No. 1, PageID.12) (cleaned up).  And:

> All of June, July went by.  Then early August [around] the 6th See Medical Record Exhibits Plaintiff started experiencing servere [sic] pain in the growing [sic] area, back[,] prostate, and pelvic area.  As to the point Plaintiff couldn't walk.  Plaintiff *wrote kite after kite to the docter [sic] R.Ns* HUM Mary Zamora to please give Plaintiff something for the servere [sic] pain but to no avail[.]  Plaintiff went ignored until[] 9/21/2020 I Plaintiff was given Naproxen 500 mg 1 tab 2 times a day Plaintiff wrote medical kite on 2 occasions that the Naproxen is doing nothing for the pain unless Plaintiff take 4 to 5 at a time.

(ECF No. 1, PageID.14, ¶ 7) (emphasis added; cleaned up).

However, a "[p]laintiff must state a plausible constitutional violation against *each individual defendant*—the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) (emphasis added).  "'[A] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant.'"  *Courser v. Michigan House of Representatives*, 404 F.Supp.3d 1125, 1140 (W.D. Mich. 2019) (quoting *Tatone v. SunTrust Mortg., Inc.*, 857 F.Supp.2d 821, 831 (D. Minn. 2012)).

Plaintiff does attach to his declaration in opposition to the instant motion a number of medical kites, which are likely those referenced in, but not attached to

17

his complaint.  To the extent they contain unredacted names, the names of

Defendants Branch, Adams, Coleman, Souder, and Comer do appear in very small

font at the bottom of some of the individual kites.  (*See* ECF No. 37, PageID.244-

263.)[4]

Plaintiff appears to imply that if the Court referred to these documents, it

would determine that he properly stated his claims, and demonstrated deliberate

indifference.  (*See* ECF No. 37, PageID.241-242.)  However, despite the serious

and disconcerting nature of Plaintiff's claims, it is not the Court's job to scour the

complaint and supporting documentation, along with Plaintiff's exhibits in support

of his response to this motion, to develop his claims or to connect dates with

actions and with specific individual defendants.  Doing so could lead to a complete

misconstruction of the complaint and Plaintiff's claims.  *See Frengler v. Gen.*

*Motors*, 482 F. App'x 975, 976-77 (even in pleadings drafted by *pro se* parties,

"'[c]ourts should not have to guess at the nature of the claim asserted'") (quoting

*Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)); *Rogers v. Detroit Police*

*Dep't*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report

and recommendation of Binder, M.J.) ("[C]ourts may not rewrite a complaint to

include claims that were never presented, nor may courts construct the plaintiff's

---

[4] Some of the names also appear in an additional document Plaintiff attaches to his
declaration, but it is unclear to me what the document is, or how it relates to his
allegations and claims.  (*See* ECF No. 37, PageID.269-270.)

legal arguments for him.  Neither may the Court 'conjure up unpled allegations.'")

(internal citations omitted).  *See also Evans v. Mercedes Benz Fin. Servs., LLC*,

No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.)

("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se*

plaintiff must comply with basic pleading requirements, including Rule

12(b)(6).").  Plaintiff must do this himself.  Accordingly, the Court should dismiss

Plaintiff's claims against Defendants Branch, Adams, Coleman, Souder, and

Comer for failure to state a claim against them.

### b.   Defendants Smith and Dodman

This reasoning also applies to Defendant Smith, identified as an SLF RN,

and Defendant Dodman, the SLF Nursing Supervisor; thus, the Court should

dismiss Plaintiff's claims against both.  Plaintiff makes no specific allegations

against either in his complaint.  He did specifically name Smith in SLF-775,

attached to his complaint, stating, "I was told by the nurse L.P.N Smith

[unreadable] that Dr. D Barrows said that I'm already taking Cymbalta that will

help suppress the pain alone with purchasing Asp[i]rin and Motrin out of the

inmate store there is nothing he can do for my pain verbatim."  (ECF No. 1,

PageID.38.)  And the August 6 and 13, 2020 incident dates of that grievance may

correspond to the general allegation Plaintiff made in Paragraph 7 of his complaint

that he wrote kites to unidentified "RNs" to ask for pain medication, to no avail.

(ECF No. 1, PageID.14, ¶ 7.)  But, again, the duty to construe *pro se* complaints liberally does not require the Court to put puzzle pieces together in an effort to determine whether Plaintiff stated claims against each individually named Defendant under Fed. R. Civ. P. 12(b)(6).  Moreover, I note that Plaintiff's statement about Defendant Smith in SLF-775 hardly seems to state a claim against her for deliberate indifference to serious medical needs.  *See Phillips*, 534 F.3d at 539; *Richmond*, 885 F.3d at 939.  In Plaintiff's own words, she simply relayed to him Defendant Dr. Barrows's decision regarding Plaintiff's prescription for pain medication.  (ECF No. 1, PageID.14, ¶ 7.)

The same reasoning makes it appropriate for the Court to dismiss Plaintiff's claims against Defendant Dodman.  I had to scour Plaintiff's declaration to find: (1) his name in the attached documents on, at least, a Clinical Encounter-Administrative Note dated May 5, 2020, which may correspond to Plaintiff's allegation at Paragraph 4 of his complaint that he underwent a prostate biopsy on May 29, 2020 (*see* ECF No. 1, PageID.13, P 4), and only indicates preparation for, not delay of, that procedure (ECF No. 37, PageID.271); (2) two kites related to Plaintiff waiting for a biopsy and receiving inadequate pain and cancer treatment, which only state, but do not confirm, that the kites would be referred to Defendant Dodman (ECF No. 37, PageID.253-254); and (3) a Clinical Encounter-Administrative Note for an off-site CT and bone scan (ECF No. 37, PageID.273).

20

Again, Plaintiff seems to imply that these attached documents support his argument that he did state claims against each Defendant, but with no directly corresponding allegations as to Defendant Dodman specifically in Plaintiff's complaint, I cannot prudently conclude that Plaintiff has stated a claim against Defendant Dodman for deliberate indifference.

Moreover, the fact that Defendant Dodman served as the respondent at Step I of SLF-503 (*see* ECF No. 32-3, PageID.210) fails to alter my recommendation. Mere participation in the grievance process does not trigger liability, or amount to personal involvement, under 42 U.S.C. § 1983.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

### c.      Defendants Russell and Lamb

As with the above Defendants, the Court should dismiss Defendants Russell and Lamb for Plaintiff's failure to state a claim against them.  Plaintiff fails to make any specific allegations against Defendant Lamb, the Quality Assurance Clinical Assistant, or Defendant Russell, the MDOC Hearings/Grievance Manager. Nor can their names be found in the kites Plaintiff attaches to his declaration, insofar as the Court can tell and to the extend the names on those documents are unredacted.  (*See* ECF No. 37, PageID.244-263.)

Defendant Lamb was the Step II respondent in SLF-503 (ECF No. 32-3, PageID.201-202, 204, 207-208), and Defendant Russell signed the Step III

responses for SLF-503 and SLF-876 (ECF No. 32-3, PageID.193, 205-206), but, again, mere participation in the grievance process does not trigger liability or amount to the personal involvement necessary to state a claim under 42 U.S.C. § 1983. *Shehee*, 199 F.3d at 300.

### d.   Defendant Washington

Next, the Court should find that Plaintiff has failed to state a claim against Defendant Washington, and dismiss her from the lawsuit.

The only direct allegation in Plaintiff's complaint against Defendant Washington, the MDOC Director, states:

> M.D.O.C Heidi E. Washington has prisons all over the state of Michiga[n].  And their [sic] are over 115 cancer treatments centers in MI.  Heidi Washington use hospitals physician cancer centers all over Michigan my question is why it was so hard to get treatment?  My cancer could have been caught 2 times before being diagnose[d] with terminal cancer.
>
> Prostate cancer is one of the most treatable forms of cancer while it is contain[ed] within the prostate or even in the pelvic lymphnodes with the proper treatment, chemotherapy, radiation therapy and surgery to remove lymphnodes within the pelvic.  Plaintiff should have been referred to '1' of the many urologist[s] [around] Michigan know[ing] [sic] this was [a] necessary medical need, of life and death.

(ECF No. 1, PageID.16, ¶ 11) (cleaned up, in part, for clarity).

This allegation, however, appears to base Defendant Washington's liability upon the theory of *respondeat superior* alone, which the law precludes.  Indeed, "[t]he law is clear that liability of supervisory personnel must be based on more

than merely the right to control employees." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982). "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays*, 668 F.2d at 874. Looking to the above allegation, Plaintiff fails to do so here against Defendant Washington.

### e.    Defendant Vashaw

Finally, the Court should find that Plaintiff fails to state a claim against Defendant SLF Warden Vashaw.

Plaintiff does plead that he was transferred from RGC to SLF on December 27, 2019, and "has written numerous medical kites, complaints[,] gri[e]vances, lette[r]s to Docter [sic] Darrel Barrows[,] Warden Robert Vashaw, HUM/Sup[e]rvisor Mary Zamora about taking me out for a biopsy . . . Due to Plaintiff was ordered by Dr. Darrel Barrows a P.S.A on 3/12/2020 level was 35.5. P.S.A was repeated on 4/16/2020 sometime in April level had elevated very high but still to no avail 46.8[.] (ECF No. 1, PageID.12-13, ¶¶ 2-3) (cleaned up).

However, mere awareness of the fact that Plaintiff was in need of a biopsy, especially by the Warden, who is not directly involved in health care decisions, is insufficient to impose liability under 42 U.S.C. § 1983.

> [S]upervisory liability also has sharp limits.  It will not attach for "a mere failure to act."  "[A] supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional right of another."  And supervisory liability requires more than negligence or recklessness.

*Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (internal citations omitted).

In *Sedore v. Burt*, No. 1:16-cv-903, 2019 WL 4740589, at *14-15 (W.D. Mich. Sept. 12, 2019), report and recommendation adopted 2019 WL 4738142, the court considered a similar scenario and stated:

> In Count I, plaintiff alleged that since June 4, 2015, he wrote kites to MCF Warden Burt about his poor medical care at MCF, but the Warden never spoke to him or intervened on his behalf.  While at MCF, plaintiff was under the medical care of the facility's medical staff.  Warden Burt is not one of the medical professionals responsible for plaintiff's medical care.  "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability."  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).
>
> In addition, Warden Burt was not deliberately indifferent for allowing the prison's medical staff to do their job of treating prisoners, including plaintiff.

The same reasoning ought to apply here.

### 3. The Court should find that Plaintiff failed to exhaust any claims against Defendant Bennett

Should the Court agree with the above analysis under Fed. R. Civ. P.

12(b)(6), it need not consider Defendants' exhaustion arguments with regard to

Defendants Washington, Vashaw, Dodman, Russell, Lamb, Branch, Comer,

Adams, Smith, Coleman, and Souder.  This leaves, for present purposes, Defendant

SLF HIM Bennett, for whom the MDOC Defendants do not argue failure to state a

claim.

Instead, Defendants argue that Plaintiff failed to exhaust his claims against

Defendant Bennett because she is not named in SLF-503 or SLF-876.  (ECF No.

32, PageID.152, 167-177; ECF No. 35, PageID.229-230.)

### a. Exhaustion under the PLRA

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq*.,

a prisoner may not bring an action "with respect to prison conditions under section

1983 of this title, or any other Federal law . . . until such administrative remedies

as are available are exhausted."  42 U.S.C. § 1997e(a).  Congress enacted the

provision to address the "outsized share" of prisoner litigation filings and to ensure

that "the flood of nonmeritorious claims does not submerge and effectively

preclude consideration of the allegations with merit."  *Jones v. Bock*, 549 U.S. 199,

203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the

quantity and improve the quality of prisoner suits[.]"  *Porter v. Nussle*, 534 U.S.

516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to

correct its own mistakes with respect to the programs it administers before it is

haled into federal court, and it discourages disregard of [the agency's] procedures."

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation

omitted).

"There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.  The

prison's grievance process determines when a prisoner has properly exhausted his

or her claim.  *Id*. at 218 ("The level of detail necessary in a grievance to comply

with the grievance procedures will vary from system to system and claim to claim,

but it is the prison's requirements, and not the PLRA, that define the boundaries of

proper exhaustion.").  Thus, the PLRA requires not only exhaustion, but *proper*

exhaustion.  *See Woodford*, 548 U.S. at 92 (concluding that if a prisoner fails to file

a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion

requirement).  "[P]roper exhaustion of administrative remedies . . . means using all

steps that the agency holds out, and doing so *properly* (so that the agency addresses

the issues on the merits.)"  *Id*. at 90 (quotation marks and citation omitted).  As

long as the prison "clearly rejects a grievance for a reason explicitly set forth in the

applicable grievance procedure, a subsequent § 1983 claim based on the grievance

will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard*,

No. 2:09-CV-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (internal

quotation marks and citation omitted).  That said, a court "is not required to blindly

accept the state's application of the procedural rule." *Reeves v. Salisbury*, No. 11-

cv-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), report and

recommendation adopted in part, rejected on other grounds, 2012 WL 3151594

(E.D. Mich. Aug. 2, 2012).

Finally, inmates are not required to specially plead or demonstrate

exhaustion in their complaints." *Jones*, 549 U.S. at 216.  Instead, failure to exhaust

administrative remedies is an affirmative defense under the PLRA.  *Id*. at 212-13.

As such, defendants bear the burden of proof on exhaustion.  *Surles v. Andison*,

678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of

proving that a PLRA plaintiff has not exhausted his administrative remedies.").

### b.    Grievance procedures at the MDOC

Pursuant to PD 03.02.130, dated March 18, 2019, the administrative

remedies available at the MDOC are as follows.  First, the inmate must attempt to

resolve the issues with the staff member involved within two business days of

becoming aware of a grievable issue.  (MDOC PD. 03.02.130, Exhibit 1 to

Defendants' MSJ, ECF No. 32-2, PageID.184, ¶ Q.)  If the issues are not resolved,

within five business days, the inmate may file a Step I grievance using the

appropriate form.  (ECF No. 32-2, PageID.184, ¶ Q.)  "Dates, times, places and

names of all those involved in the issue being grieved are to be included."  (ECF No. 32-2, PageID.184, ¶ S.)  The inmate should receive a response at Step I within fifteen business days of filing the grievance.  (ECF No. 32-2, PageID.185, ¶ Z.)

If the inmate is dissatisfied with the Step I disposition or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form.  (ECF No. 32-2, PageID.186, ¶ DD.)  As with Step I, the inmate should receive the Step II response within fifteen business days.  (ECF No. 32-2, PageID.186, ¶¶ EE.)

Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance.  (ECF No. 32-2, PageID.187, ¶ HH.)  "To file a Step III grievance, the grievant must send a completed Prisoner/Parolee Grievance Appeal form (CSJ-247B) to the Grievance Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions."  (ECF No. 32-2, PageID.187, ¶¶ HH.)  The matter is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

### c. Analysis

The Court should find that Plaintiff has failed to exhaust his administrative remedies against Defendant Bennett, but for alternative reasons not specifically asserted by the MDOC Defendants.

"Under the Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and *names of all those involved* in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (emphasis added). However, in *Reed-Bey*, 603 F.3d at 325, the Sixth Circuit held that "[w]hen prison officials decline to enforce their own procedural requirements," like the naming requirement, and "opt to consider otherwise-defaulted claims on the merits," they generally waive any exhaustion argument on the basis of that procedural requirement.

Bennett is not specifically named in SLF-503, SLF-876, or SLF-775, although in SLF-503, Plaintiff named "M.D.O.C/and the medical staff/HUM here at St. Louis Correctional Facility" (ECF No. 32-3, PageID.199, 203, 209), which could, if the net is permitted to be cast that broadly, conceivably include Defendant HIM Bennett. And the grievance was not rejected for failure to name those being grieved, but was instead decided on the merits through Step III, as outlined above. This may well have been because Plaintiff identified the HUM, a specific person, even without using their name, SLF declined to reject the grievance on this

29

procedural basis.  But the Court need not consider that issue, for the reasons discussed below.

The only specific allegation against Defendant Bennett in Plaintiff's complaint at Paragraph 8 states:

> Defendants Dr. Barrow, Mary Zamora Kelly Bennett was approve to have Kelly Bennett ass. superviser [sic] to order Plaintiff a abdomen/pelvis on 8/31/2020 and on 9/15/2020 Plaintiff was diagnoses; was that metastatic by Dr[.] Amar S. Mehta at Mid Michigan Health 300 E. Warwick Drive Alma MI (989) 466-3342 cancer has broke through Plaintiff prostate into the Plaintiff lymphnodes[.]

(ECF No. 1, PageID.14-15, ¶ 8.)  On the basis of this allegation, the above three grievances could not exhaust Plaintiff's deliberate indifference claim against Defendant Bennett.  SLF-503 pertains to delays in Plaintiff's cancer diagnosis/treatment, but the incident dates are listed as December 28, 2019, and May 20, 2020.  (ECF No. 32-3, PageID.199, 203, 209.)  In SLF-876 Plaintiff listed a closer incident date of September 28, 2020, but that is still after the dates identified in Paragraph 8, and in that grievance, Plaintiff acknowledges that he had already received his metastatic diagnosis.  (ECF No. 32-3, PageID.196.)  And, finally, in SLF-775, which lists incident dates of August 6 and 13, 2020, before the date of the allegation against Defendant Bennett, Plaintiff does discuss the fact that his treatment and diagnosis have been delayed, but specifically names Defendants

Smith and Barrows, and complains about receiving inadequate treatment for his pain.  (ECF No. 1, PageID.38.)

Defendant Bennett argues that the claim against her was not properly grieved.  She is right about that, even if not necessarily for the reason given.  The Court should find that Plaintiff did not exhaust his claims against Defendant Bennett, and dismiss her from the lawsuit.

### D.     Conclusion

The Court should **GRANT** the MDOC Defendants' motion to dismiss or in the alternative, for summary judgment (ECF No. 32), and dismiss from the lawsuit Defendants Heidi Washington, Robert Vashaw, Kelly Bennett, Richard Dodman, Richard D. Russell, Patricia Lamb, Karen Branch, Candace Comer, Stephanie Adams, Rebecca Smith, Loria Coleman, and Natalie Souder.  This would leave claims remaining against only Defendants Mary Zamora, Darrel Barrows, Keith Papendick, and Connie Whipple.

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  July 27, 2022                    s/*Anthony P. Patti*
                                         Anthony P. Patti
                                         UNITED STATES MAGISTRATE JUDGE

32