UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LILBERT GREGORY,

              Plaintiff,                    Case No. 4:21-cv-10408
                                          District Judge Matthew F. Leitman

v.                                    Magistrate Judge Anthony P. Patti

HEIDI WASHINGTON et al.,

              Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT ZAMORA'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 49)

**I.**     **RECOMMENDATION:** The Court should **GRANT** Defendant Mary

Zamora's motion for summary judgment. (ECF No. 49.)

**II.**     **REPORT:**

       **A. Background**

          **1. Factual Background[1]**

    Plaintiff Lilbert Gregory, a state prisoner[2] proceeding *in forma pauperis*,

---

[1] The factual background provided above is taken from the operative pleading (ECF No. 1) as recounted in my July 27, 2022 report and recommendation (ECF No. 40) and is meant to orient the discussion section of this report. The allegations are not taken as facts and, to the extent any factual disputes arise, the summary judgment analysis will focus on those facts supported by admissible evidence.

[2] Plaintiff is currently housed at Saginaw Correctional Facility. *See* https://www.michigan.gov/corrections/otis (last visited, February 4, 2024).

filed the instant action under 42 U.S.C. § 1983 on February 5, 2021, against: (1) Heidi Washington, (2) Robert Vashaw, (3) Mary Zamora, (4) Darrel Barrows, (5) Kelly Bennett, (6) Richard Dodman, (7) Richard D. Russell, (8) Keith Papendick, (9) Connie Whipple, (10) Patricia Lamb, (11) Karen Branch, (12) Candace Comer, (13) Stephanie Adams, (14) Rebecca Smith, (15) Loria Coleman, and (16) Natalie Souder, in their individual and official capacities. (ECF No. 1.)  He claims deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment and Article 1, § 16 of the Michigan Constitution.  The matter was assigned to the Honorable Matthew F. Leitman, who referred the case to me for all pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1)(A)&(B).  (ECF No. 23.)

The underlying facts, as alleged in Plaintiff's complaint, are as follows. In December 2019, while housed at the Charles E. Egeler Reception and Guidance Center (RGC), Plaintiff was approved for a prostate biopsy. (ECF No. 1, PageID.12, ¶ 1.)  However, he was transferred to St. Louis Correctional Facility ("SLF") on December 27, 2019, and despite sending medical kites, complaints, grievances, and letters to Defendants Barrows, SLF Warden Vashaw, and SLF Health Unit Manager (HUM) Zamora, did not undergo the biopsy until May 29, 2020, at which time Dr. Michael Hoff diagnosed him with prostate cancer and ordered treatment. (ECF No. 1, PageID.12-13, ¶¶ 2-4.)

On June 11, 2020, Plaintiff spoke with Defendant Barrows, who indicated that Plaintiff's cancer was contained within his prostate, and that it would take two or three weeks to see a radiologist. (ECF No. 1, PageID.13-14, ¶¶ 5-6.) When Plaintiff began experiencing severe pelvic pain in August, he wrote a kite to Defendant Health Unit Manager (HUM) Zamora for pain medication. (ECF No. 1, PageID.14, ¶ 7.)

However, he did not receive Naproxen for the pain until September 21, 2020, and ultimately, the medication did not relieve his pain. (ECF No. 1, PageID.14, ¶ 17.)  On August 31, 2020, Defendants Barrows and HUM Zamora approved Defendant Health Information Manager (HIM) Bennett's order for an "abdomen/pelvis," and on September 15, 2020, Dr. Amar S. Mehta at Mid Michigan Health informed Plaintiff that the cancer had spread to his lymph nodes. (ECF No. 1, PageID.14-15, ¶¶ 8.)  Dr. Devin Malik at Henry Ford Health System confirmed Plaintiff's Stage IV cancer diagnosis on October 28, 2020, and questioned why it had taken so long for Plaintiff to see an oncologist. (ECF No. 1, PageID.17, ¶ 13.)  Plaintiff was then transferred from SLC to G. Robert Cotton Correctional Facility in November 2020, but he continued to see Dr. Malik, who apologized that this happened to Plaintiff, and said he could only work to prolong Plaintiff's life, as the cancer had spread too far. (ECF No. 1, PageID.17-18, ¶¶ 14-15.)

On the basis of the above allegations, Plaintiff claims that Defendants showed deliberate indifference to his serious medical needs by delaying diagnosis and treatment and failing to adequately manage his pain. (ECF No. 1, PageID.19-24, ¶¶ A-I.)

### 2. Procedural Background

On January 31, 2022, Defendants Heidi Washington, Robert Vashaw, Kelly Bennett, Richard Dodman, Richard D. Russell, Patricia Lamb, Karen Branch, Candace Comer, Stephanie Adams, Rebecca Smith, Loria Coleman, and Natalie Sowder/aka Souder (collectively, the "MDOC Defendants") filed a motion to dismiss Gregory's claims against them, or, in the alternative, for summary judgment. (See Mot., ECF No. 32.)  On July 27, 2022, I recommended that the Court grant the motion and dismiss Gregory's claims against the MDOC Defendants (the "R&R").  (ECF No. 40.)  No objections were filed, and the Court adopted my recommendation, leaving only Defendants Mary Zamora, Darrel Barrows, Keith Papendick, and Connie Whipple.  (ECF No. 42.)

I issued a scheduling order setting a dispositive motion deadline and Defendant Mary Zamora timely moved for summary judgment.  (ECF No.49.)

### B. Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . .” *Stansberry*,

651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56.

Rather, “liberal treatment of pro se pleadings does not require lenient treatment of

substantive law.” *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir.

2006).  In addition, “[o]nce a case has progressed to the summary judgment stage, .

. . ‘the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S.

506, 512-13 (2002)] and [the Federal Rules] are inapplicable.’” *Tucker v. Union of*

*Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)

(quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.

2004)).  The Sixth Circuit has made clear that, when opposing summary judgment,

a party cannot rely on allegations or denials in unsworn filings and that a party’s

“status as a pro se litigant does not alter [this] duty on a summary judgment

motion.” *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a *pro se* plaintiff because he “failed to present

any evidence to defeat the government’s motion”).

## C.   Discussion

“The Eighth Amendment’s prohibition on cruel and unusual punishment

generally provides the basis to assert a § 1983 claim of deliberate indifference to

6

serious medical needs . . . ." *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). "A constitutional claim for deliberate indifference to serious medical needs requires a showing of objective and subjective components." *Phillips*, 534 F.3d at 539; *see also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2001)). As the Supreme Court has instructed in *Farmer v. Brennan*, 511 U.S. 825 (1994):

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. *First*, the deprivation alleged must be, objectively, "sufficiently serious," . . . ; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," . . . . For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. . . .
>
> The *second* requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." . . . To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." . . . In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety . . . .

*Farmer*, 511 U.S. at 834 (emphases added, internal footnote and internal citations omitted). The Court then went on to set forth the test for deliberate indifference:

> . . . a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and *disregards* an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's

7

failure to alleviate a significant risk that he *should have perceived but did not*, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id*. at 837–838 (emphases added). "[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment." *Id.* at 839–840.

Here, Defendant Zamora argues that Plaintiff cannot sustain an Eight Amendment claim against her because: (1) Plaintiff can meet neither the objective nor the subjective prong of the deliberate indifference test; and, (2) Defendant Zamora was not involved in the direct care of Plaintiff, so Plaintiff can show no personal involvement. Defendant also asserts she is entitled to qualified immunity. The Court should agree with Defendant on all three points.

In support of her arguments, Defendant relies heavily on her affidavit. In her affidavit, she makes the following relevant averments:

- I was employed by the Michigan Department of Corrections (MDOC as a Health Unit Manager ["HUM"] at St. Louis Correctional Facility at all times relevant to this lawsuit. (ECF No. 49-2, PageID.407, ¶ 3.)

- As a HUM I oversee the operations of healthcare at SLF. HUMs hire, train, evaluate, and discipline (when necessary) those staff who directly report to the HUM at that facility. There are approximately seventeen people who regularly work at SLF's healthcare unit. I directly supervise five people, including the nursing supervisor. All nine nurses report directly to the nursing supervisor, who reports to me. The Dental Clinic is also within healthcare. (ECF No. 49-2, PageID.407, ¶ 5.)

- Daily I provide no direct patient care. My only direct patient interaction comes when staff may need to be relieved for an emergent issue or for a temporary reprieve if there is not enough staff to cover an absence. (ECF No. 49-2, PageID.407, ¶ 6.)

- Direct care is typically done by the nurses and medical practitioners (physicians, nurse practitioners, etc.) (ECF No. 49-2, PageID.408, ¶ 7.)

- I did not provide direct care to Gregory between December of 2019 - November of 2020. I was never required to physically assess or run any form of diagnostics on prisoner Gregory or treat his pain. (ECF No. 49-2, PageID.408, ¶ 8.)

- Gregory's lock information[3] shows that he arrived at our facility on December 27, 2019 and left on November 20, 2020. This coincides with the brunt of the COVID-19 ramp-up and testing. During this time, many medical providers were not seeing people regularly, shifted to virtual visits, and delayed or canceled appointments we had set up for the prisoners. Healthcare did the best it could trying to get appointments for prisoners, but it was no easy task during this period. It was difficult at times to find medical providers to provide services. (ECF No. 49-2, PageID.408, ¶ 9.)

- Never did I purposefully or intentionally delay Gregory's care, nor did I recklessly disregard any serious medical need Gregory had. SLF healthcare does the best it can to always meet the needs of prisoners, including Gregory while he was at our facility. (ECF No. 49-2, PageID.408, ¶ 10.)

- The care Gregory received while at SLF between December of 2019 and November of 2020 amounts to hundreds of pages of medical records of care provided by numerous providers, but not me. I provided no direct care to Gregory because of my administrative

---

[3] Plaintiff's "Lock History" is attached to Defendant's motion as Exhibit B, and indicates the dates and location of his incarceration. (ECF No.49-3, PageID.411-12.) There does not appear to be any dispute about the dates of his housing at SLF.

position as the facility's HUM.  (ECF No. 49-2, PageID.408-09, ¶ 11.)

- I did not violate Gregory's constitutional rights. (ECF No. 49-2, PageID.408, ¶ 11.)

### 1.  Defendant Zamora was not personally involved in the direct care of Plaintiff

Relying on her affidavit, along with portions of Plaintiff's deposition, Defendant argues that there is no evidence she was personally involved in the direct care of Plaintiff and thus she is entitled to judgment as a matter of law. Indeed, a review of the record evidence indicates that Defendant's involvement in Plaintiff's care was marginal, and Plaintiff's theory against her relates solely to her role as supervisor.

For example, when asked why he thought Defendant Zamora was responsible for a canceled, or delayed, biopsy, Plaintiff testified that "if it's not Zamora, it's under Zamora's watch."  (ECF No. 49-4, Page.ID.429.)  Plaintiff continued, "no one stepped in and did anything about it.  So it was on Zamora's watch because she's the manager.  She's the overseer of all the MP's there, she's the overseer of all the nurses there.  She's running medical, that's her job."  (ECF No. 49-4, Page.ID.429.)   Plaintiff then reiterated that "Zamora was the head honcho and she failed to promulgate the rules and enforce her authority to remedy the situation."  (ECF No. 49-4, Page.ID.429.)  Plaintiff complained that someone canceled his biopsy, though he did not know who, and implied it was Zamora's

10

fault because she was in charge. "So rather it was – so rather it was Zamora, or the deputy, or the warden *or whoever* canceled it; Dr. Papendick, *whoever* canceled it. She could've forced her authority to com- -- to promulgate the rules . . ." (ECF No. 49-4, PageID.430 (emphases added).)

Based on Plaintiff's deposition and Defendant Zamora's affidavit, it is clear that Plaintiff seeks supervisory liability against Defendant Zamora, which is simply not permitted under § 1983. "The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays*, 668 F.2d at 874.

In her motion for summary judgment, Defendant pointed to evidence that her role as a HUM is supervisory and that she provides no direct patient care. (ECF No. 49-2, PageID.407, ¶¶ 5-6.) She also specifically averred that she did not provide direct care to Plaintiff between December of 2019 and November of 2020, and that she was never required to physically assess or run any form of diagnostics on him. (ECF No. 49-2, PageID.408, ¶ 8.) In response, Plaintiff provides a few documents which show that Defendant made "administrative notes," about Plaintiff's treatment and responded to telephone calls from Plaintiff's wife. (ECF

11

No. 56, PageID.521-27.)  Similar to his deposition testimony, Plaintiff states in his response brief that Defendant "being the health unit manager shall be responsible for the operation of the health care clinic" (ECF No. 56, PageID.513)[4], and that she failed to enforce "her authority to rectify the constitutional violation" (ECF No. 56, PageID.514).  According to Plaintiff, "Defendant also had knowledge of Plaintiff['s] condition on all occasions and could have exercise[d] there [sic] authority to take the needed action to rectify the constitution violations."  (ECF No. 56, PageID.514.)

The Court should find that Plaintiff has failed to identify a triable issue with respect to Defendant Zamora's personal liability under § 1983.  Mere awareness of Plaintiff's general condition (or even that he was in need of a biopsy) is

---

[4] Plaintiff submits his response brief with an "affidavit of verification," in which he "swears that the facts stated in this affidavit is [sic] true to his knowledge, and the facts stated on information and belife [sic] are true to the best of his knowledge and belife [sic]."  ECF No. 56, PageID.518.)  Contrary to Plaintiff's suggestion, however, this "verification" does not convert his unsupported response brief into an affidavit or a qualified declaration. Under the Federal Rules of Civil Procedure, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  "While an 'affidavit' is required to be sworn to by the affiant in front of an 'officer authorized to administer oaths,' *see* Black's Law Dictionary 54 (5th ed.1979), 28 U.S.C. § 1746 allows for 'unsworn declarations under penalty of perjury' to support any matter that legally requires an affidavit to support it."  *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002).  Plaintiff's "verification," is neither notarized nor sworn under penalty of perjury and thus does not constitute admissible evidence under the Federal Rules of Civil Procedure.

insufficient under 42 U.S.C. § 1983 to impose liability on a supervisor who is not

directly involved in health care decisions.

> [S]upervisory liability also has sharp limits. It will not attach for "a
> mere failure to act." "[A] supervisor cannot be held liable simply
> because he or she was charged with overseeing a subordinate who
> violated the constitutional right of another." And supervisory liability
> requires more than negligence or recklessness.

*Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (internal citations omitted).

Defendant provided sufficient evidence demonstrating there is no genuine issue of

fact that she was not directly involved with Plaintiff's care and operated only as a

supervisor. *See Stansberry*, 651 F.3d at 486. In response to this evidence, Plaintiff

was required to "make an affirmative showing with proper evidence in order to

defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

He did not, instead intimating that as "head honcho" Defendant must have been

responsible for his care. But, "[s]ection 1983 liability will not be imposed solely

upon the basis of respondeat superior. There must be a showing that the supervisor

encouraged the specific incident of misconduct or in some other way directly

participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Indeed,

the Sixth Circuit "has consistently held that damage claims . . . arising from alleged

violations of constitutional rights must allege, with particularity, facts that

demonstrate what each defendant did to violate the asserted constitutional right."

*Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citation omitted). In other

words, a plaintiff must allege the personal involvement of each defendant and must allege facts showing that each defendant participated in, condoned, encouraged, or knowingly acquiesced in alleged misconduct to establish liability. *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).

Because Plaintiff has failed to meet his burden to point to sufficient evidence to create a jury question on Defendant's personal involvement, the Court should **GRANT** summary judgment in favor of Defendant Zamora. *See Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

### 2.  Plaintiff cannot meet either element of the deliberate indifference test.

Because there is no supervisory liability under § 1983, the Court need not consider Defendant's alternative arguments.  However, Defendant is also entitled to summary judgment on the alternative bases, so I will touch on them briefly.

First, Defendant has persuasively shown that Plaintiff cannot meet either element of the deliberate indifference standard.  With respect to the objective prong, Plaintiff's complaint alleges that Defendant unreasonably delayed his cancer treatment which resulted in his cancer becoming terminal.  (ECF 1,

14

PageID.26-27.)  The Sixth Circuit recognizes three categories of claims under the objective component: (1) claims that the prisoner did not receive any treatment; (2) claims that the treatment was "so cursory as to amount to no treatment at all;" and (3) claims that despite on-going treatment, the care provided was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citations omitted).

Plaintiff has failed to present any evidence that could support a jury verdict that anything Defendant Zamora did, or did not do, amounted to a deprivation that was "objectively, sufficiently serious" to "result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (citations omitted).  Plaintiff has submitted no expert testimony to support his theory.  He has not shown, by way of testimony or medical records, that any delay in treatment worsened his condition beyond the normal progression of cancer.

In her motion, Defendant submits evidence that just before Plaintiff was transferred to SLF from a county facility, a prostate risk assessment indicated that there was a 62% chance he had high grade prostate cancer, an 18% chance he had low grade prostate cancer, and a 20% chance of a negative biopsy.  (ECF No. 49-6, PageID.452.)  A prostate exam was requested but he was transferred to SLF less than two weeks later, on December 27, 2019.  (ECF No. 49-3, PageID.411.)  A

biopsy appointment was scheduled for March 6, 2020, but was cancelled and

rescheduled for March 27, 2020 because there an absence of a qualified technician.

(ECF No. 49-10, PageID.462; ECF No. 49-12, PageID.466.)  The March 27, 2020

appointment was canceled due to the COVID-19 outbreak. (ECF No. 49-12,

PageID.466.)  Defendant submits clinical notes from April 15, 2020, that Plaintiff

was seen by Defendant Darrell Barrows, who indicated that Plaintiff "states he is

discouraged and worried that his elevated PSA has not been taken care of.  He was

sent to have a biopsy but the facility did not have an US tech so it was R/S.  He

was then supposed to go but all outside appointments were postponed due to

COVID-19 outbreak."  (*Id.*)  The notes also state that Plaintiff "was reassured that

he will go off site once we are told that the urology clinics are open and

performing procedures."  (*Id.*)

He was seen again on May 5, 2020, and another biopsy appointment was

requested by his medical provider, Barbara Zeis.  (ECF No. 49-13, PageID.469.)

The biopsy occurred as scheduled on May 29, 2020.  (ECF No. 49-14,

PageID.473-75.)  The biopsy resulted in a diagnosis of prostate cancer and, on

September 11, 2020, he received a full body bone scan and CT scan of the

abdomen and pelvis.  (ECF No. 49-14, PageID.480.)  He then met with Doctor

Devin Malik for a Hematology/Oncology appointment on October 28, 2020.  (ECF

No. 49-16, PageID.483.)  His cancer was staged as IV-A. His diagnosis, prognosis,

and treatment plans were discussed, and it was recommended that he return for his next appointment in four to six weeks.  (ECF No. 49-16, PageID.487.)  However, less than four weeks later, on November 20, 2020, Plaintiff was transferred from SLF to G. Robert Cotton.  (ECF No. 49-3, PageID.411.)

As Defendant points out in her motion, Plaintiff "arrived at SLF undiagnosed, then underwent testing, had a biopsy, was diagnosed, and a treatment plan was executed all in less than a year during the start of the COVID pandemic." (ECF No. 49, PageID.382.)  In the absence of expert testimony, or further medical records that he has not provided, Plaintiff cannot show that this medical care is objectively deficient.

When, as here, a plaintiff claims that the treatment he received was inadequate or unreasonably delayed, he is required to "present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment" and "'medical proof that the provided treatment was not an adequate medical treatment of [the prisoner's] condition or pain." *Rhinehart*, 894 F.3d at 737.  "This will often require 'expert medical testimony … showing medical necessity for' the desired treatment and 'the inadequacy of the treatments' the inmate received." *Id.* (quoting *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017)).  "The plaintiff also must 'place verifying medical evidence in the record to establish the detrimental effect' of the

inadequate treatment. *Id.* "A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Id.* at 738.

Even assuming that Plaintiff could show that Defendant was personally involved in his care, a reasonable jury could not find that he has evidence sufficient to satisfy the objective component of the deliberate indifference test.

Nor has he pointed to sufficient evidence to create a triable issue of fact with respect to the subjective component. A "mere difference of opinion between the plaintiff and his doctor regarding diagnosis and treatment does not state a claim under the Eighth Amendment." *Selby v. Martin*, 84 F. App'x 496, 499 (6th Cir. 2003) (citing *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Although fundamental fairness "mandate[s] that medical care be provided to one who is incarcerated and may be suffering from serious injury," that "is not to say that every request for medical attention must be heeded." *Westlake*, 537 F.3d at 860. To satisfy the subjective component, Plaintiff must show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that the official did in fact draw the inference, and then disregarded that risk. *Farmer*, 511 U.S. at 837.

Because Defendant Zamora had no direct participation in Plaintiff's care (ECF No. 49-2, PageID.408-09, ¶ 11), Plaintiff cannot show that she knew that

delayed treatment would jeopardize his prognosis and ignored or disregarded that risk.  Instead, Defendant provided evidence through her affidavit that during the majority of the time Plaintiff was at SLF this time, "many medical providers were not seeing people regularly, shifted to virtual visits, and delayed or canceled appointments we had set up for the prisoners." (ECF No. 49-2, PageID.408, ¶ 9.) She avers that "Healthcare did the best it could trying to get appointments for prisoners, but it was no easy task during this period."  (*Id.*)  She further avers that she never purposefully or intentionally delay[ed]  [Plaintiff]'s care." (ECF No. 49-2, PageID.408, ¶ 10.)

The record evidence before the Court is simply insufficient to show that Plaintiff's care was "so woefully inadequate as to amount to no treatment at all." *Colwell v. Corizon Healthcare Inc.*, No. 11-cv-15586, 2014 WL 6686764, at *4 (E.D. Mich. Nov. 26, 2014) (citing *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)) (internal quotation marks omitted).  In evaluating an Eighth Amendment claim, courts "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received *inadequate* medical treatment."  *Id.* (emphasis added).  When a prisoner claims his care was inadequate, "[c]ourts are generally reluctant to second guess the medical judgement of prison officials."  *Id.* (recognizing a narrow exception for cases where medical treatment was "so woefully inadequate as to amount to no

19

treatment at all").  Moreover, the claims at issue here suggest only negligence in diagnosis and/or treatment of a medical condition, at worst.  It is well settled that "a complaint that a [healthcare provider] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("'[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment.")

Here, Plaintiff cannot create a jury question on either the objective or subjective elements of deliberate indifference and the Court should **GRANT** the summary judgment motion on this basis as well.

### 3.  Defendant Zamora is entitled to qualified immunity

Defendant also argues she is entitled to qualified immunity.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action.

20

. . assessed in light of the legal rules that were 'clearly established' at the time it was taken[.]" *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*, 457 U.S. at 818-819). "Qualified immunity 'gives ample room for mistaken judgments,' protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). Because Plaintiff has failed to identify a genuine issue of any personal involvement by Defendant in the alleged unconstitutional conduct, and because Plaintiff has also failed to identify a genuine issue that there was indeed a constitutional violation, Defendant is entitled to qualified immunity. *See Essex v. Cnty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013) ("Plaintiffs were required to point to some actual conduct by [the defendant] that directly contributed to their injury; we have no such showing here."). [5]

---

[5] To the extent Plaintiff pursues a cause of action against Defendant Zamora in her official capacity, the Court should grant summary judgment on that claim as well. The Eleventh Amendment of the United States Constitution bars any suit for money damages, absent consent, against the state. U.S. Const. amend. XI. An action against a state employee in his official capacity is an action against the state. *Brandon v. Holt*, 469 U.S. 464, 471 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents."). Accordingly, Defendant is "not subject to suit for monetary damages in [her] official capacity under § 1983." *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70–71 & n.10 (1989)).

## 4.  Article 1, § 16 of the Michigan Constitution

In his complaint, Plaintiff brings claims for cruel and unusual punishment under both the Eighth Amendment of the U.S. Constitution and also under the analogous state provision, Article 1, § 16 of the Michigan Constitution.  (*See* ECF No. 1, PageID.10, 12.)  Both parties appear to treat these claims interchangeably. Defendant moved for summary judgment in her favor on the entire complaint, not differentiating between the state and federal constitutional claims.  In response, Plaintiff did not identify any reason why the claims should be treated differently and also applied the same analysis for the entirety of the complaint.

Const. 1963, art. 1, § 16 provides, in relevant part, that "cruel or unusual punishment shall not be inflicted . . . ."  Michigan courts have held that "[a] constitutional tort may exist when a plaintiff alleges a violation of the Michigan Constitution by a governmental policy."  *Davis v. Michigan Dep't of Corr*., No. 347243, 2020 WL 703564, at *1 (Mich. Ct. App. Feb. 11, 2020) (citing *Rusha v. Dep't of Corrections*, 307 Mich. App. 300, 305; 859 N.W.2d 735 (2014)). Generally, the Michigan Court of Claims has exclusive jurisdiction to hear constitutional tort claims under MCL 600.6419(1)(a).  *Id.*  However, "[n]o claimant may be permitted to file claim in [the Michigan Court of Claims] against the state nor any department, commission, board, institution, arm or agency thereof who has an adequate remedy upon his claim in the federal courts …." Mich. Comp.

Laws 600.6440.

To the extent Plaintiff has properly pleaded and brought a claim under the Michigan Constitution, the Court should grant summary judgment on the claim for the same reasons as expressed above for the Eighth Amendment claim.  While, "[i]n an appropriate case, the Michigan Constitution's prohibition against 'cruel or unusual' punishment may be interpreted more broadly than the Eighth Amendment's prohibition against 'cruel and unusual' punishment," *Carlton v. Dep't of Corrections*, 546 N.W.2d 671 (Mich. Ct. App. 1996), "federal cases interpreting the Eighth Amendment may still provide useful persuasive authority for what constitutes cruel or unusual punishment."  *Davis,* No. 2020 WL 703564, at *1 (citing *Johnson v. Wayne Co.*, 540 N.W.2d 66 (Mich. Ct. App. 1995).  In *Davis*, the Michigan Court of Appeals summarized the relevant law for claims under the Michigan Constitution:

> "A prison official's deliberate indifference to a substantial risk of harm to an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment." *Johnson*, 213 Mich. App. at 152. "Deliberate indifference requires a showing that the official was subjectively aware of the risk." *Id*. This standard applies in the context of medical care. *See Morden v. Grand Traverse Co*., 275 Mich. App. 325, 333; 738 N.W.2d 278 (2007). A prison official must know the facts underlying the inference that a substantial risk of serious harm exists, and the official must draw the inference. *Jackson v. Detroit*, 449 Mich. 420, 430-431; 537 N.W.2d 151 (1995). Additionally, a prison official is not liable if he or she acted reasonably in response to the substantial risk of harm. *Id*. at 431.

*Davis*, 2020 WL 703564, at *2.

23

Because the standards under the state and federal Constitutions are substantially similar, and because Plaintiff has provided no evidence to suggest that Defendant did not act reasonably in response to any substantial risk of harm, the Court should **GRANT** summary judgment on the state claim for the same reasons as the federal claim. *See Davis*, 2020 WL 703564 (affirming grant of summary disposition where the state court "ruled that plaintiff failed to provide evidence that defendant was deliberately indifferent to plaintiff's harm such that either cruel or unusual punishment or a deprivation of due process occurred."); *see also Kitchen v. Whitmer,* 486 F. Supp. 3d 1114, 1130 (E.D. Mich. 2020) (Michelson, J.) (granting treating Michigan constitutional claim under same analysis as Eighth Amendment claim where plaintiff had "not treated his claim under the Michigan Constitution any differently from his claim under the United States Constitution," always referenced the two provisions "in tandem," and made "no reference to any textual difference.")

### D. Conclusion

For the reasons stated above, the Court should find that Plaintiff has not shown evidence sufficient to defeat Defendant's motion for summary judgment and Defendant has shown that she is entitled to judgment as a matter of law. Accordingly, the court should **GRANT** Defendant's motion for summary judgment. (ECF No. 49.)

## III.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without

25

merit, it may rule without awaiting the response.


Dated:  February 9, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE